Good morning. May it please the Court, Lila Morgan, Federal Defenders of San Diego, on behalf of Appellant Mr. Angulo-Palacios. The government asked a series of questions that compelled Mr. Angulo to state that he knew there was cocaine in his pocket. The District Court had previously correctly held that this evidence was inadmissible under Federal Rule of Evidence 403. Defense counsel tried to prevent Mr. Angulo from answering these questions, and when Mr. Angulo finally answered, the District Court failed to strike the answers from the record. As a result, all the jury heard was that Mr. Angulo knew there was some type of drug in the vehicle. Thus, Mr. Angulo's conviction should be reversed because the questions should have not been asked and the evidence should have been stricken from the record. The District Court correctly excluded the evidence of the cocaine in Mr. Angulo's pocket. In this case, throughout in limine proceedings, the government repeatedly stated they were not intending to offer the evidence as 404B. Thus, there was no hearing. Subsequent to Mr. Angulo's testimony and a good deal of cross-examination, the District Court held that the evidence was inadmissible under 403 after having a small hearing outside of the presence of the jury, in which the government counsel was allowed to inquire on cross-examination specifically regarding this evidence. After all of that had taken place, the District Court still concluded that the evidence was more prejudicial than probative under Rule 403. Subsequent to that, the government then engaged in a series of broad cross-examination questions, beginning with a proper question about whether Mr. Angulo specifically knew about marijuana or the drugs in the Ford Explorer he was driving on the date that he was arrested. He answered no to that. The government's subsequent question was whether he knew this is at excerpt of record, page, excuse me, 366 to 367. Subsequent to that, the government attorney asked, you knew there were drugs in the vehicle. Defense counsel objected to that point, and Mr. Angulo, knowing the court's ruling about the cocaine, answered specifically, I didn't know anything about the marijuana, the only drug with which he was charged. The government counsel, still not satisfied with that answer, said, you didn't say that, but you knew there were drugs in the vehicle. Again, Mr. Angulo said, in all honesty, I didn't know that marijuana was in that car. Still not satisfied, the government asked a third time about any drugs in the car. Over objection, Mr. Angulo finally said yes. Here's the tricky part of this, it seems to me. On direct examination, he was asked, did you know there was marijuana anywhere in the car? And he said, no. Now, we know that you don't have to know that the drug you're carrying is the particular drug you are carrying, but you do know that there is a contraband in the car. So, I mean, that's one problem. So, he's now saying, did you know that there were any drugs in the car? To which he could have responded, but didn't. I didn't know that I was transporting across the border for all this, for the reasons you're saying, any drugs anywhere in the car. Didn't. I mean, that's the tricky thing. In some ways, that is tricky, but I think the questions that were asked of Mr. Angulo on direct were actually more carefully tailored than how government counsel Well, I just read it. I mean, I know it was drugs hidden in the car, and it was marijuana specific, and I understand that the element of the offense isn't specific to the drug charge. Well, the problem, I mean, he asked, or she asked, I don't know who it was, asked the question, did you know there was marijuana anywhere in the car? He didn't have to do that. I mean, all he needed to ask was, did you know that there was any marijuana in the tires? Because there was no issue about there being drugs of any sort anywhere other than the tires. That's where the stuff was found. But the question was still specific to marijuana, and it was a she, because it was me. Okay. Sure it was. So that's why I just put, I didn't know. It was myself that tried the case. That question was specific to marijuana, but there were, there was another question regarding whether, did you know there was any drugs hidden in the tires of the vehicle? The question was limited to marijuana because the drugs he had in his pocket was cocaine, an entirely different substance. The government's question didn't have to do with cocaine. It had to do with drugs not even hidden in the vehicle. That question was also hidden, marijuana hidden in the vehicle. The government's question was much more broad, drugs in the vehicle, and came on the heels of two specific denials regarding the marijuana. Drugs in the vehicle is more broad than the question of marijuana hidden in the vehicle. And after that direct examination, I think the important thing here is that after that direct examination, and after initial cross-examination, the district court said that the defense had not opened the door on that and that the evidence was excluded under Rule 403. Yeah, sure. I mean, look, we all know if the government had said, look, get serious, you knew you were carrying cocaine in your wallet. Now, that would have, I mean, there's no issue. Okay? Clearly. Clearly. Could not have done that. Here, I mean, he clearly didn't do that. So, you know, let's suppose the question should not have been asked. What's the prejudice? Because, you know, I mean, they were asking if he said he didn't know that there was marijuana there. The agent testified that at secondary your client said that he knew that there was something bad in the car. So the line of questions which says, well, you said that there was something bad in the car. Did you know there were drugs there? The line of questioning about something bad in the vehicle took place after this exchange as well. Right. But the prejudice in this case comes essentially from the fact that what the jury heard is, did you know there were drugs in the vehicle? Yes. The only drugs the jury had any knowledge of whatsoever was the drugs with which she was charged, the marijuana. The explanation, the statements made by Mr. Angulo and then cut off by the district court, well, in fact, I remembered that I had just a little clearly to show that he was discussing, he was talking about the cocaine. After all, he'd been cross-examined. You know that because you know what else was there, but the jury doesn't know that. Right. That's all the jury knows is my client just admitted to the only element of the offense. The only contested element of this offense was knowledge. So he goofed up. I mean, he didn't have to answer the question that way. That's the problem. The problem was he tried to answer the question honestly twice before, and the government counsel didn't want to have that answer. And he tried to explain himself. Twice he had said, I didn't know about the marijuana, I didn't know about the marijuana. Yes. If he had said no, he would have been clearly protected. There would have been no ability to extrinsically impeach him with the cocaine evidence. He was attempting to answer government counsel's questions in an honest way, cognizant of the district court's ruling. And with that, I'll reserve my remaining time. Thank you. Mr. Turnell? Thank you, Your Honor. First, I'd like to thank the panel for graciously permitting me to do this by telephone. And I think we need to put the outburst by the appellant in kind of a way that we can have a little more context. Well, you know what? I mean, to call it an outburst by the appellant is a little – well, let's just say it's not a particularly necessary characterization. Well, I think that he – It could equally be said that there was an outburst by the prosecutor in pressing for an answer to the question that, in good faith, the prosecutor is bound to have known would have been interpreted as asking about knowledge of the baggie of cocaine. Well, I think we need to put this whole thing in the context of the few pages of transcript that we have here. First of all, at the conclusion of direct examination, defense counsel asked more than did you know there was marijuana in the car? At ER-332, the question is, did you know that there were drugs in the tires of the car? No. Did you think there were – was anything hidden in the tires? No. And then the question, did you know there was marijuana anywhere in the car? Then the answer is no. All right. Then – so that – the defense counsel opened the door, we submit, by bringing up the topic of any drugs at all. So that then became a legitimate question by the prosecutor. Secondly, is that – but for the interruption with the defendant saying what he did, the prosecutor would have launched – and you can see that in the transcript – the prosecutor was then setting up the next line of questioning, which was, you knew there was something bad in the car. And if you read the few pages of transcript, then one just flows into the other. So the prosecutor, one, was taking advantage of defense counsel's question, and two, was setting up the next series of questions that he had to ask. That is, did you – you knew something – excuse me – you knew something bad was in the car. On direct examination, I see the series of questions you've identified on 332. I do not recall seeing any place the defendant being asked whether there were drugs anywhere in the car. Is that correct? That's correct. But still, I submit that on cross-examination in this kind of a case, it's perfectly legitimate to ask, did you know there were drugs anywhere else in the car? Except that everybody knew that the honest answer to that question was yes, and that that question referring to the cocaine in the wallet had been excluded by the court just a few moments before. So what exactly was the prosecutor trying to get, other than a reference to the evidence that the court had already excluded? Well, I think, again, you have to put the whole thing in context. The defendant denied any knowledge of any drugs whatsoever. No, he did not. That question was not – you just told me that question was not asked of him until the prosecutor asked the question. Well, let me step back. His defense was that I didn't know it was there. That was his defense. I didn't know, okay, it was there. I didn't know it was there. Well, I'm not sure – let me start. I don't think he said, wow, somebody stuck something in my wallet. I think what he said was, I didn't realize I still had that. No, no, no. I'm not talking about the cocaine. I'm talking about the marijuana. Well, that's critically different, because you're trying to argue, too, that he said there were no drugs, and he said there was no marijuana. No, that's true. But as was pointed out at the beginning, he doesn't have to know it's marijuana. But it was marijuana. But it was. This isn't a case where, you know, he didn't know what it was. It was marijuana. And that was what the issue. Did he know the stuff in the trunk, or rather in the tire, was there? I mean, I'm still trying to figure out what the question posed by the prosecutor, how it didn't expand the inquiry specifically to get to the territory that he wasn't supposed to inquire into. Again, I think you have to look at it in context, in that the prosecutor, among other things, was setting up the next line of questioning. You knew something was bad in the car. No, no. Stop. Explain to me how this particular question, and notably the expansion to any drugs anywhere in the vehicle, set that up. Well, because if you'll recall, at secondary, this defendant voided his bladder. And was obviously nervous. And the end of it, he had to know there was something bad in that car. There was something in that car. Sure. But that's the marijuana. And you've got a good argument on marijuana. But if you'll also recall that during the testimony, in the outside of the presence of the jury hearing, he testified that when he was there at secondary, he did not remember he had the cocaine in his wallet. That it had been there, he was holding it for a friend to go to a party, but he didn't remember it was there. So voiding his bladder was not a result of cocaine in his wallet. Exactly. So why was the question asked of him expanded from marijuana in the tire to drugs anywhere in the car, a subject that he had not previously testified to, and which the prosecutor knew, because of the discussion about cocaine, was a territory he wasn't supposed to get into if it was intended to get to the cocaine in the wallet. Well, I respectfully have to disagree that that was the thrust of it. The prosecutor stayed away from mentioning cocaine. He legitimately, we are entitled to ask if this individual on cross-examination, if he knew there were drugs. I mean, he could. I mean, theoretically, the defendant could say, well, I didn't know it was in the tires. Well, did you know it was anywhere else? Why did you void your bladder if you didn't think there was anything in the car? The answer he gave the first time the question was asked, in all honesty, I didn't know that marijuana was in that car. The next question, did you know if there were any drugs in the car? That screams out to me an inquiry for a drug other than marijuana. Well. So what other purpose could it possibly? Legitimately, it could, because again, as the jury was instructed, he does not have to know it was marijuana. He just has to know there was an illegal controlled substance in the car. And whether it was marijuana or heroin in the tires or whether it was methamphetamine in the tires, if he voided his bladder because he knew there was something bad in the car. Enough with the voiding of the bladder. That's another piece of evidence that could persuade the jury. It's got nothing whatsoever that I understand to do with this, and I can't figure out why you keep referring to it. If it does have a connection, please explain to me. The connection is that the prosecutor is trying to explore this person's level of knowledge of illegal drugs in that vehicle at the time he crossed the border. And the point is that he told us that he did not remember that he had the cocaine in the wallet. And whether he remembered that or not, that's something the judge told you not to get into. Yes, that's true. But the point is that he is not going to have some visceral reaction because he had cocaine in his wallet. He's going to have a visceral reaction because he has something illegal in the car. See, we're making the same point here. Because that, to me, justifies further questions about marijuana or something in the tires. It doesn't justify a question that seems deliberately expanded to reach the topic that he's not supposed to reach. Well, if ---- Mr. Curnow, can I ask you a question in a different way? Certainly. When you asked the question for the third time, what answer did you expect to elicit? Well, expecting him to perhaps now fess up to the fact that he knew that there was something in the car. On cross-examination ---- Yes, you've already talked about what's in the tires. He had already said, look, I didn't know there was marijuana in the tires. Well, did you know marijuana was anywhere else? Well, just a minute. Well, there wasn't any marijuana anywhere else. That's the thing. There was never any issue about that. That's a fact. May I finish my question? The point is ---- May I finish my question? I'm sorry. All right. There was no marijuana anyplace else in the car. It was only in the tires. If the legitimate basis for the line of inquiry was the off chance that he didn't know it was marijuana, but might have known it was some kind of illegal contraband, then isn't the way to ask that question, well, did you know that there was any other drugs, any other kind of drug in the tires? Well, that certainly is. But limiting the prosecutor to the tires is, I think ---- Well, there's no ---- Because ---- I don't agree with that because there's no question here about where the contraband was found. I mean, there just wasn't. It was in the tires. That's true. But that's assuming that whoever loaded up the car with the marijuana told the defendant that the marijuana was in the tires and nowhere else in the car. All that this person knew, I mean, the other side of the coin is all this person knew is that there was marijuana, there was drugs somewhere in that car because he was being paid or getting a discount on his car to drive that car across. Okay. Thank you, Mr. Cornell. I think your time has expired. You have a few seconds left. Thank you. Ms. Morgan. I think what I would appreciate your using your few seconds to explain this question I asked before you didn't answer, which is assuming that it was error, why, in light of all of the evidence in the case, is it prejudicial? I think the question the jury asked actually shows the prejudice in this case. The jury submitted a question ---- Well, I don't. So tell me why else you think it's prejudicial. Because what the jury heard was an admission from Mr. Angulo as to the only contested element. And the government has the burden of providing fair assurances at this point that the error of admitting this and not striking it from the record didn't probably affect the verdict. The jury simply heard ---- Well, he took the test. Yes. He took the stand, put his own credibility on the line. The jury can entirely disbelieve everything he testifies to. He told a ridiculous story, contradicted himself three different times about how he was ---- what he was doing coming across the border. And his reaction from the second he was stopped clearly showed that he was aware that he was doing something massively illegal. Nobody cares about a baggie in the wallet, which he, who has come across the border a hundred times, probably knew. He was scared that they had ---- he would find out he had something massively illegal. In light of all of that evidence, why does the cross-examination ---- why can we reasonably conclude that that cross-examination is going to affect the outcome of that case? That cross-examination elicited an admission from Mr. Angulo to the one contested element of the offense. Did you know there were drugs in the vehicle? Yes. The only drugs that the jury heard anything about was the marijuana with which he was charged. It's incredibly prejudicial. Let me ask you this question. You know, if that's true, he could easily have pursued it on redirect and said, okay, look, you said yes to the drug question. What did you mean? At that point, I mean, it's not prejudicial to have a baggie of cocaine. Our position was that it was incredibly prejudicial to have that baggie of cocaine. Worse than a confession to having drugs in the car? The fact ---- by admitting the evidence ourselves, we would have waived any objection to the entry of the evidence at all, evidence that we'd already thought and taken the position. There's a Supreme Court case law that says we waive the issue by putting it in on direct. It's in my brief. That by admitting the evidence, defense counsel can't then turn around and argue it shouldn't have come in, which we had been arguing from previous to eliminating the motions, that the evidence was inadmissible. Okay. Any other questions from anybody? Great. Thank you very much. Thank you. The matter just argued will be submitted, and the Court will stand adjourned. Thank you. Recession.
judges: Gibson, Rymer, Clifton